**PEGGS RUN COAL COMPANY, Inc.,**
**Plaintiff,**

v.

**DISTRICT 5, UNITED MINE WORKERS**
**OF AMERICA, Defendant.**

Civ. A. No. 71–265.

United States District Court,
W. D. Pennsylvania.

Feb. 28, 1972.

Leonard E. Price, Conte, Courtney, Tarasi & Price, Pittsburgh, Pa., for plaintiff.

Lloyd F. Engle, Jr., Melvin P. Stein, Kuhn, Engle & Blair, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

In this action, brought under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185,[1] a jury found a breach by the defendant, District 5, United Mine Workers of America, of a contract between the plaintiff, Peggs Run Coal Company, Inc., and the United Mine Workers of America, and awarded the plaintiff $11,873.79 in damages. Expectably, the defendant has moved (1) for judgment notwithstanding the verdict, and, alternatively, (2) for a new trial. The principal bases of the motions are three: (1) that the defendant is not a labor organization within the

1. Section 185(a) provides:
   "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

meaning of 29 U.S.C. § 152(5), (2) that the defendant was not a party to the contract which was found to have been breached, and (3) that the Court's charge to the jury with respect to the legality of the work stoppage staged by the defendant was erroneous.

The relevant facts were substantially undisputed. From December 1, 1970 to December 9, 1970, the plaintiff's miners, members of the defendant, refused to work. The proffered reason for the refusal was the failure of the plaintiff to keep an agreement with the defendant to provide its miners with a bathhouse. The collective bargaining agreement under which the parties were operating at that time was that of November 4, 1968. It is that agreement (the named parties to which were the plaintiff and the United Mine Workers of America) which the defendant was found to have breached and which the defendant contends was erroneously interpreted in the Court's charge to the jury.

■ I will consider first the defendant's contentions (1) and (2). That the defendant is not a "labor organization" within the meaning of 29 U.S.C. § 152(5) [2] is an argument with which the Court is not unfamiliar.[3] The evidence introduced at the trial of this action, including, particularly, that of the Constitution of the defendant and of the role played in the controversy over the bathhouse by certain of the officers of the defendant, clearly established that the defendant is a "labor organization".

■ The defendant's second contention is equally unpersuasive. No one disputes that District 5, United Mine Workers of America was not a named party to the contract. However, § 301 does not require the parties to an action thereunder to be the parties to the contract alleged to have been breached.

Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Local 4076, United Steelworkers of America v. United Steelworkers of America, AFL–CIO, 327 F.Supp. 1400 (D.C.W.D.Pa.1971). It confers jurisdiction on federal courts with respect to actions for *violations* of contracts between an employer and a labor organization. It makes no reference to the possible parties to those actions. At trial the defendant conceded that it was bound by the contract. The distinction which it attempts to make, i. e., that while it is bound by the contract it is not a party to it and therefore is not a proper party to an action under § 301, is a contention which is less than irresistible, and consequently it, too, fails to destroy § 301 jurisdiction.

■ The real thrust of the defendant's motions is the challenge to the charge of the Court with respect to the legality of the work stoppage which the defendant staged. The Court charged as follows:

"Now, as a matter of law, I instruct you that a strike to settle a dispute, which a contract or collective bargaining agreement, as contracts between employers and employees are called, provides shall be settled [finally] and bindingly by the grievance procedure which ends in compulsory arbitration, violates the contract. In other words, when there is a contract that provides for binding arbitration, a strike or work stoppage to try to enforce such a contract is a violation of the contract, and I so charge you as a matter of law.

Further, as a matter of law, I instruct you that the dispute involved in this case concerning the erection of a bathhouse was such a dispute. In other words, if you find that there was a

---

2. Section 152(5) provides:
"The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers con-

cerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

3. See United States v. Budzanoski, 331 F. Supp. 1201 (D.C.W.D.Pa.1971).

strike, a work interruption from December 1 through December 9, 1970 over the erection of a bathhouse, any such strike or work stoppage was a violation of the contract."

The defendant contends that this interpretation of the contract is erroneous. It contends that a work stoppage does not violate a contract that does not expressly contain a no-strike clause, and that since the November 4, 1968 agreement does not, the work stoppage thereunder was not illegal. The defendant's contention is, as a matter of law, unsupportable.

In Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), it was held that even in the absence of an express no-strike clause, a no-strike obligation could be implied from an agreement which provides for the settlement of disputes exclusively and finally by compulsory and binding arbitration. The Court stated that,

"[T]he grievance over which the union struck was, as it concedes, one which it had expressly agreed to settle by submission to final and binding arbitration proceedings."

And concluded, therefore, that,

"[T]he strike which it called was a violation of that contractual obligation."

The defendant does not deny the arbitration provisions of the 1968 agreement, but argues that since (1) it additionally contains an express abrogation of any and all no-strike clauses of its predecessor agreements and (2) the word "exclusively" with respect to arbitration was removed from a particular predecessor agreement, no no-strike obligation can be implied. This very agreement, however, has been interpreted by the courts to imply a no-strike clause, most recently in Blue Diamond Coal Company v. United Mine Workers of America, 436 F.2d 551 (6th Cir. 1970).

In Blue Diamond, both those cases which have implied a no-strike contract and those which have not were reviewed. The principal case which has not is International Union, United Mine Workers of America v. N.L.R.B., 103 U.S.App.D. C. 207, 257 F.2d 211 (1958).[4] In that case, however, Mr. Chief Justice Burger, then a member of the District of Columbia Circuit, writing in dissent, reasoned as follows:

"The majority opinion rests its reversal of the Labor Board action on the ground that the collective bargaining contract *does not* contain an affirmative 'no strike' clause, but it overlooks what the contract *does* contain, namely a solemn agreement by both parties to submit *all disputes* to an agreed process of negotiation leading finally to a binding arbitration if the preliminary steps are not successful. The mutual promises to settle all grievances by this peaceful process are plain and unambiguous, and this indeed is not disputed."

\* \* \* \* \* \*

"I cannot accept the view of the majority that these explicit detailed contractual provisions represent merely a loose 'gentleman's agreement' that the parties will *try* to resolve their problems without strikes or lockouts; to me they are the words of contracting parties who intend to set up binding provisions for what experience has taught is effective machinery for the day to day bargaining between management and employees. They are the words of enlightened union and management leaders who intend to abandon brutal and wasteful methods and substitute negotiation and arbitration as a means of settling disputes." [Emphasis in original.]

This, I think, is the preferable interpretation.

Among those cases which were considered in Blue Diamond which have im-

---

4. See also Mile Branch Coal Company v. United Mine Workers of America, 109 U.S.App.D.C. 265, 286 F.2d 822 (1961) which simply relies on International Union United Mine Workers of America v. N.L. R.B.

plied a no-strike obligation was Lewis v. Benedict Coal Corp., 259 F.2d 346 (6th Cir. 1958).[5] In Lewis, Mr. Justice Stewart, then a member of the Sixth Circuit, noting the revisions in the 1952 agreement (which included the elimination of the word "exclusively") concluded that,

> " . . . the obligation to resort to the specified procedure [arbitration] was not substantially changed."

Significantly, *Lewis* was affirmed, albeit by an equally divided Court, in Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S. Ct. 489, 4 L.Ed.2d 442 (1960). Moreover, the Supreme Court has recently extended the meaning of clauses in labor agreements which provide for compulsory final and binding arbitration to include an allowance of an injunction to stop a strike when arbitration is, by contract, an appropriate alternative. Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L. Ed.2d 199 (1970). Although the labor agreement in *Boys Markets* contained an express no-strike clause, the touchstone of the Court's holding was, more particularly, the arbitration machinery which the agreement contained. The desired end, then, of peaceful, civilized labor-management relations has been encouraged even in an action for injunctive relief notwithstanding the Norris-La-Guardia Act prohibitions. This action is one merely for damages. I think, then, that the charge of the Court was a correct statement of the law, and the defendant's third contention must therefore fall. See also United States Steel Corp. v. United Mine Workers of America, 320 F.Supp. 743 (D.C.W.D.Pa.1970).

Finally, the defendant additionally contests the dismissal of its counterclaims. At best, in the light of the correctness of the Court's charge with respect to the legality of the work stop-

page and the jury's verdict, the defendant's counterclaims are vacuous.

An appropriate Order will be entered denying the defendant's motion.

---

5. See also United Construction Workers v. Haislip Baking Co., 223 F.2d 872 (4th Cir. 1955) and W. L. Mead, Inc. v. International Broth. of Teamsters, etc., 126 F. Supp. 466 (D.C.Mass.1954), aff'd, 230 F. 2d 576 (1st Cir. 1956).