707 F.2d 1067
 113 L.R.R.M. (BNA) 3083, 97 Lab.Cas. P 10,211
 PAINTING AND DECORATING CONTRACTORS ASSOCIATION OF
SACRAMENTO, INC., a California non-profit
corporation, Plaintiff-Appellee,
v.
PAINTERS AND DECORATORS JOINT COMMITTEE OF the EAST BAY
COUNTIES, INC., a California non-profit corporation;
Painting and Decorating Contractors of California, Inc., a
California non-profit corporation; Painting and Decorating
Contractors Association of Napa-Solano Counties, Inc., a
California non-profit corporation; Painting and Decorating
Contractors Association of the East Bay Counties, Inc., a
California non-profit corporation; and District Council of
Painters No. 16, an unincorporated labor organization,
Defendants-Appellants.
 No. 82-4469.
 United States Court of Appeals,
Ninth Circuit.
 Argued Feb. 16, 1983.
Submitted Feb. 25, 1983.
Decided June 8, 1983.
Rehearing and Rehearing En Banc Denied Oct. 4, 1983.
 
 Robert C. Nicholas, Haas & Najarian, San Francisco, Cal., for plaintiff-appellee.
 David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before MERRILL, CHOY and ALARCON, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 In this appeal from the grant of a preliminary injunction, we are faced with the question of whether a non-signatory to a collective bargaining agreement is a proper party to a suit brought under Sec. 301(a) of the Labor Management Relations Act. We conclude it is and affirm the order of the district court granting the preliminary injunction.
 
 I. Facts and Proceeding Below
 
 2
 Plaintiff-appellee, Painting and Decorating Contractors Association of Sacramento ("Sacramento Association") is a multi-employer trade group consisting of painting and decorating contractors in a six-county area of Northern California. The Sacramento Association, along with two other multi-employer trade groups, the Painting and Decorating Contractors Association of Napa-Solano Counties, Inc. ("Napa-Solano Association") and the Painting and Decorating Contractors of the East Bay Counties, Inc. ("East Bay Association"), is signatory to a collective bargaining agreement ("Agreement") with the District Council of Painters No. 16 ("District Council"), which is a labor organization composed of several local unions within the California counties covered by the Agreement. The employer-members of the Sacramento Association are parties to the Agreement by virtue of their membership in the association.
 
 
 3
 The Agreement provides for the establishment of a Joint Committee (formally, Painters and Decorators Joint Committee of the East Bay Counties, Inc.) to administer and enforce the Agreement. The Joint Committee is a California non-profit corporation consisting of two representatives from each of the three signatory employer associations and six representatives from the District Council. The Joint Committee's duties and responsibilities are delineated in the Agreement. One of the primary functions of the Joint Committee is to issue Shop Cards to employers indicating that the employer is a party to the Agreement and is thus observing the terms and conditions of the Agreement. The District Council will not provide labor for any employer who does not have a Shop Card.
 
 
 4
 Employers who are members of one of the three signatory associations are considered "member signatories" for purposes of receiving a Shop Card and are charged $50 per year for their Shop Card. However, the Agreement allows employers who are not members of one of the three signatory associations to become parties to the Agreement and to obtain a Shop Card. Such employers are designated by the Agreement as "non-member signatories" and in order to obtain a Shop Card must sign a copy of the Agreement and pay the Shop Card fee of $50 per year plus the equivalent amount of yearly chapter dues paid by members of the Painting and Decorating Contractors Association[1] in the area in which the employer does business.
 
 
 5
 On January 22, 1982, the Sacramento Association withdrew its membership from the state (Painting and Decorating Contractors of California ("PDCC")) and the national (Painting and Decorating Contractors of America ("PDCA")) chapters of the Painting and Decorating Contractors Association. The reason for the withdrawal was to avoid paying the annual membership fees of these organizations. By withdrawing, the Sacramento Association would be able to save $240 per member in yearly fees.
 
 
 6
 On April 28, 1982, each member of the Sacramento Association was informed by the PDCC that he would be considered a non-member signatory if he did not (1) rescind his withdrawal from the PDCC and the PDCA, or (2) join the Napa-Solano Association, whose jurisdiction had been expanded to cover the territory formerly governed by the Sacramento Association. The Joint Committee accepted the position of the PDCC.
 
 
 7
 As non-member signatories, members of the Sacramento Association would have to pay an additional $700 in yearly Shop Card fees on the renewal date of June 30, 1982. Additionally, representatives from the Sacramento Association were denied access to the April meeting of the Joint Committee.
 
 
 8
 On June 15, 1982, the Sacramento Association filed suit in district court under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, naming the Joint Committee, the District Council, the Napa-Solano Association, the East Bay Association and the PDCC as defendants. The gravamen of the complaint is that there is nothing in the Agreement which conditions member-signatory status on being affiliated with the PDCC and that the defendants breached the Agreement by classifying the Sacramento Association employers as non-member signatories upon their withdrawal from the PDCC and the PDCA.
 
 
 9
 The Sacramento Association sought relief in the form of a preliminary and permanent injunction prohibiting the Joint Committee from: (1) refusing to allow the Sacramento Association delegates to sit and participate as voting members in the Joint Committee's meetings; (2) refusing to renew the Shop Cards of the employer-members of the Sacramento Association upon payment of $50 from each member; and (3) threatening to take any action to disqualify the Shop Card of any employer-member of the Sacramento Association. They also sought to enjoin the PDCC and the Napa-Solano Association from attempting to induce members of the Sacramento Association to drop their membership in the Sacramento Association and to affiliate with the Napa-Solano Association on the basis that if they failed to do so, they would be considered non-member signatories.
 
 
 10
 The district court granted the preliminary injunction upon concluding that the Sacramento Association was likely to prevail on the merits, and the balance of hardships tipped in favor of the Sacramento Association because the Sacramento Association and its employer-members would be threatened with immediate and irreparable injury and economic loss if the injunction was not granted. The Joint Committee and the District Council appeal the grant of the preliminary injunction contending that the district court erred in its determination that: (1) the instant case is not a labor dispute within the meaning of the Norris-La Guardia Act, 29 U.S.C. Sec. 101 et seq.; (2) there is no mandatory grievance procedure contained in the Agreement to be exhausted before the case can come to court; and (3) the Sacramento Association would suffer irreparable harm if the preliminary injunction was not granted.
 
 
 11
 We note appellate jurisdiction under 28 U.S.C. Sec. 1292(a)(1) and affirm the district court's findings and order in all respects on the basis of its reasoning as stated above. However, we feel that the issue of jurisdiction over the Joint Committee under Sec. 301 needs explication.
 
 II. Section 301 Jurisdiction
 
 12
 Section 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), provides:
 
 
 13
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 14
 To assert jurisdiction under Sec. 301(a), a litigant must allege a breach of a contract between an employer and a labor organization or between labor organizations in an industry affecting commerce. There is no question that the jurisdictional requirements of Sec. 301(a) have been met with respect to the District Council, the Napa-Solano Association and the East Bay Association, since the suit is based on an alleged breach of contract between an employer and a labor organization in an industry affecting commerce, and they are all signatories to the Agreement. However, there is some uncertainty as to Sec. 301(a) jurisdiction over the Joint Committee because it is not signatory to the Agreement.[2] Other courts have interpreted Sec. 301(a) jurisdiction to be limited to the actual signatories to the contract at issue.[3] However, we do not give Sec. 301(a) such a reading.
 
 
 15
 Section 301 is to be given a broad interpretation. Smith v. Evening News Association, 371 U.S. 195, 199, 83 S.Ct. 267, 269-270, 9 L.Ed.2d 246 (1962). The fact that the Joint Committee is not a party to the Agreement is immaterial. Section 301(a) does not contain any requirement that the parties to an action brought thereunder must also be the parties to the allegedly breached contract. As this court has stated:
 
 
 16
 Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or an employer.
 
 
 17
 Rehmar v. Smith, 555 F.2d 1362, 1366 (9th Cir.1976); see Stelling v. International Brotherhood of Electrical Workers, 587 F.2d 1379, 1383 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 3115 (1979); Alvares v. Erickson, 514 F.2d 156, 162 (9th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 1413, 46 L.Ed.2d 106 (1975); Peggs Run Coal Co. v. District 5, UMW, 338 F.Supp. 1275, 1276 (W.D.Pa.1972), aff'd mem., 500 F.2d 1400 (3d Cir.1974).
 
 
 18
 All that is required for jurisdiction to be proper under Sec. 301(a) is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract. See Castanada v. Dura-Vent Corp., 648 F.2d 612, 616 (9th Cir.1981). Here, there is no argument that the suit is based on an alleged breach of contract between an employer and a labor organization. Furthermore, the adjudication of this case, and the Joint Committee's liability in particular, hinges on the interpretation of the Agreement (i.e., whether member-signatory status is conditioned on affiliation with the PDCC). Consequently, there is clearly Sec. 301(a) jurisdiction over the Joint Committee even though it is not signatory to the Agreement since the requirements of Sec. 301(a) have been met.
 
 
 19
 To exclude the Joint Committee from federal court and thus force the Sacramento Association to pursue its claim against the Joint Committee in state court would be contrary to the policy underlying Sec. 301. That policy is to promote industrial peace by permitting agreements between labor organizations and employers to be enforced in federal court. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). Collective bargaining agreements must be interpreted and enforced in a uniform manner to accomplish such a policy. Seymour v. Hull & Moreland Engineering, 605 F.2d 1105, 1109 (9th Cir.1979). As the Sacramento Association points out, it is possible that the district court could interpret the Agreement one way and a state court could interpret it a different way with respect to the Joint Committee, even though the same factual setting were before both courts. "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). For public policy reasons, then, inclusion of the Joint Committee in this action is essential.
 
 
 20
 To reiterate, Sec. 301(a) is a basis for jurisdiction when the suit is based on a colorable claim of breach of contract[4] between an employer and a labor organization in an industry affecting commerce and the resolution of the lawsuit is focused upon and governed by the terms of the contract.
 
 
 21
 The jurisdictional requisites of Sec. 301(a) having been satisfied with respect to the Joint Committee, it is a proper party to this action. The findings and order of the district court are AFFIRMED.
 
 
 
 [1]
 The Painting and Decorating Contractors Association is a national trade organization of painting and decorating contractors. It is an entity separate from the three signatory employer associations and is not a party to the Agreement
 
 
 [2]
 The Joint Committee probably is not an employer or a labor organization under the Labor Management Relations Act either. We need not rule on that point, however, because it is well settled that parties in a Sec. 301 action do not necessarily have to be employers or labor organizations. The word "between" in Sec. 301(a) refers to "contracts" between an employer and a labor organization, not to "suits" between them. Smith v. Evening News Ass'n, 371 U.S. 195, 200, 83 S.Ct. 267, 270 (1962); Stelling v. International Bhd. of Electrical Workers, 587 F.2d 1379, 1383 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 3115 (1979)
 
 
 [3]
 E.g., Carpenters Local Union No. 1846, etc. v. Pratt-Farnsworth, Inc., 690 F.2d 489, 500-02 (5th Cir.1982), --- U.S. ----, 103 S.Ct. 2118, 77 L.Ed.2d 1299 (1983); Loss v. Blankenship, 673 F.2d 942, 946 (7th Cir.1982); Ramsey v. Signal Delivery Service, Inc., 631 F.2d 1210, 1212 (5th Cir.1980); Teamsters Local Union No. 30 v. Helms Express, Inc., 591 F.2d 211, 217 (3d Cir.), cert. denied, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979); Baker v. Fleet Maintenance, Inc., 409 F.2d 551, 554 (7th Cir.1969); Bowers v. Ulpiano Casal, Inc., 393 F.2d 421, 423 (1st Cir.1968); Fox v. Mitchell Transport, Inc., 506 F.Supp. 1346, 1349 (D.Md.), aff'd mem., 671 F.2d 498 (4th Cir.1981); Fabian v. Freight Drivers & Helpers Local No. 557, 448 F.Supp. 835, 838 (D.Md.1978)
 Despite some broad language in those cases stating that non-signatories to the allegedly breached contract are never appropriate parties to a Sec. 301(a) action, the non-signatory parties there were dismissed because the determination of their liability was not focused upon nor governed by the terms of the contract alleged to have been breached, a jurisdictional prerequisite of Sec. 301(a). Here, since the question of the Joint Committee's liability is to be determined by the district court's interpretation of the Agreement, the present case is clearly factually distinguishable from the cases cited above, and thus the reasoning behind those decisions is inapposite.
 
 
 [4]
 The contract need not be a collective bargaining agreement as long as it is an "agreement between employers and labor organizations significant to the maintenance of labor peace between them." Retail Clerks International Ass'n v. Lion Dry Goods, Inc., 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962). Cf. District 2 Marine Engineers Beneficial Ass'n v. Grand Bassa Tankers, Inc., 663 F.2d 392, 401 (2d Cir.1981) (contract must not only promote labor peace but must also be between an employer and its employees)