972 F.2d 1337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CARPENTERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN
CALIFORNIA; Carpenters Pension Trust Fund for Northern
California; Carpenters Vacation and Holiday Trust Fund for
Northern California, et al., Plaintiffs-Appellants,
v.
SHIRLEY CONSTRUCTION, INC.; Calprop, Inc., Defendants-Appellees.
 No. 91-15823.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1992.
Decided July 29, 1992.
 
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs-Appellants are various trust funds established for the benefit of carpenters ("Trust Funds"). Trust Funds appeal the district court's dismissal of their action against Calprop, Inc., for delinquent ERISA contributions on the ground that the district court had no jurisdiction. We affirm on the ground that Trust Funds have stated no basis for federal jurisdiction even though they may have a valid third-party beneficiary claim against Calprop.
 
 
 3
 * Trust Funds argue that Calprop is obligated to make contributions to the Trust Funds under ERISA § 515, 29 U.S.C. § 1145.[1] For purposes of Title I of ERISA, ERISA § 3(5), 29 U.S.C. § 1002(5), defines an "employer" as
 
 
 4
 any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.
 
 
 5
 The question here is whether Calprop became an employer by agreeing to pay ERISA contributions which Shirley was obligated to pay under the collective bargaining agreement (CBA) between Shirley and its workers.
 
 
 6
 The flaw in Trust Funds' argument is that section 515 limits its coverage to obligations arising "under the terms of the plan or under the terms of a collectively bargained agreement." Trust Funds do not allege that Calprop is a signatory of either a plan document or a CBA. The courts "have generally refused to expand the definition of employer under ERISA to include an entity which was not a party to the collective bargaining agreement under which suit is brought." Ronald J. Cooke, ERISA Practice and Procedure § 8.34, at 8-137 (1992) (emphasis in original); see also Xaros v. U.S. Fidelity & Guar. Co., 820 F.2d 1176, 1180 (11th Cir.1987) ("We hold that nonsignator subcontractors and sureties are not employees as defined in section [3(5) ] of ERISA and as incorporated into section of the Act, thereby precluding federal subject matter jurisdiction over claims against these nonsignatories for a signatory's failure to make contributions to employee benefit plans.").
 
 
 7
 Furthermore, the fact that resolution of Trust Funds' claim against Calprop may require reference to the CBA does not render Calprop an employer. Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co., 484 U.S. 539, 549 n. 16 (1988); see also Carpenters S. Cal. Admin. Corp. v. Majestic Hous., 743 F.2d 1341, 1345 (9th Cir.1984) (fact that adjudicating lien foreclosure would require reference to CBA did not bring case within section 301 of the Labor Management Relations Act).
 
 
 8
 Majestic Housing is the most apposite case on point. In Majestic Housing, the court held that trust funds could not invoke federal jurisdiction where their action to enforce a mechanics lien was one under state law, not one arising under ERISA. Majestic Hous., 743 F.2d at 1345-46. Similarly, in the case at hand, Calprop is made responsible for the contributions not by the CBA but by the contract between Calprop and Shirley. Trust Funds may only bring suit by operation of third-party beneficiary doctrine under state law, not under the CBA.
 
 
 9
 The allegations in Trust Funds' complaint are insufficient to render Calprop an employer under either a successorship or alter ego theory. To be a successor employer, Calprop would have had to have assumed the obligations of Shirley under the CBA. Audit Servs., Inc. v. Rolfson, 641 F.2d 757, 763 (9th Cir.1981). Trust Funds, however, have merely alleged that Calprop signed a separate agreement to pay Trust Funds the ERISA contributions due from Shirley.
 
 
 10
 Trust Funds have also not alleged facts which would show that Calprop became the alter ego of Shirley. To do so, Trust Funds would have had to allege facts showing that (1) Calprop had shown no respect for the separate identity of Shirley; (2) recognition of Shirley as a separate entity would result in injustice; and (3) there was a fraudulent intent behind the Calprop-Shirley agreement. See Operating Eng'rs Pension Trust v. Reed, 726 F.2d 513, 515 (9th Cir.1984). Trust Funds did not plead facts which, if proved, would show that Calprop functioned as an alter ego of Shirley.
 
 
 11
 Trust Funds' most persuasive argument is that the Letter Agreement was intended to benefit Trust Funds. The intent of Shirley and Calprop to benefit Trust Funds bears only on Trust Funds' state law contract claim and does not federalize that claim. The obvious intent of the letter is to vest Trust Funds with third-party beneficiary contract rights vis-a-vis Calprop. No matter how strong that intent and no matter how strong a state law case Trust Funds may have against Calprop, the claim gives rise to a state--not a federal--action. ERISA is simply not implicated in any way by Trust Funds' suit against Calprop.
 
 
 12
 Finally, Trust Funds rely on cases discussing withdrawal liability under Title IV of ERISA. These cases are distinguishable. In defining "employer" for purposes of withdrawal liability, courts have taken into consideration that the purpose of the Multiemployer Pension Plan Amendments Act of 1980 was to prevent employers from undermining the financial integrity of plans by withdrawing. Korea Shipping Corp. v. New York Shipping Assoc.-Int'l Longshoreman's Assoc. Pension Trust Fund, 880 F.2d 1531, 1537 (2d Cir.1989). The courts have thus fashioned a test designed to prevent employers from funneling their contributions to avoid or escape withdrawal liability. This test requires "all parties that are obligated to contribute to a plan for the benefit of a plan's participants" to be liable for withdrawal payments. Carriers Container Council v. Mobile Steamship Assoc., 896 F.2d 1330, 1343, amended, 904 F.2d 28 (11th Cir.1990), cert. denied, 111 S.Ct. 308 (1990); Korea Shipping, 880 F.2d at 1537.
 
 
 13
 The Title IV cases are facially inapplicable to Trust Funds' alleged cause of action for delinquent contributions under ERISA § 515. Those withdrawal cases do not modify section 515's requirement that an employer's obligation arise out of a plan or a CBA. See Seaway Port Auth. v. Duluth-Superior ILA Marine Assoc. Restated Pension Plan, 920 F.2d 503, 509 (8th Cir.1990) (party not obligated to pay ERISA contributions is not subject to withdrawal liability), cert. denied, 111 S.Ct. 2827 (1991). Trust Funds cannot state a claim against Calprop under section 515, but remain free to pursue their state law claim in state court.
 
 II
 
 14
 Trust Funds argue that Calprop is a "party in interest" under ERISA § 3(14)(I), 29 U.S.C. § 1002(14)(I), and is therefore liable for Shirley's delinquent contributions. ERISA § 515 simply does not refer to parties in interest and Calprop correctly points out that the parties in interest definition is provided for the prohibited transactions rules set out in ERISA §§ 406 to 408, 29 U.S.C. §§ 1106 to 1108. Section 3(14) indicates that its definition of "parties in interest" is intended to root out potential conflicts of interest among fiduciaries.
 
 III
 
 15
 Finally, Trust Funds argue that section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), provides for federal jurisdiction over their claim against Calprop. To invoke jurisdiction under section 301, "the suit [must] be based on an alleged breach of contract between an employer and a labor organization and ... the resolution of the lawsuit must be focused upon and governed by the terms of the contract." Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm., 707 F.2d 1067, 1071 (9th Cir.1983), cert. denied, 466 U.S. 927 (1984).
 
 
 16
 Resolution of Trust Funds' state law claim does not require interpretation of the CBA. At most, resolution of the third-party beneficiary claim requires reference to the CBA to determine the amount of contributions due Trust Funds but not to determine whether Calprop is liable to Trust Funds. The Supreme Court in Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988), intimated that the situation presented here would not implicate section 301:
 
 
 17
 A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. As we said in Allis-Chalmers v. Lueck, 471 U.S., at 211, "not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301...."
 
 
 18
 Id. at 413 n. 12 (citation omitted). Under Lingle, the Trust Funds' claim is not subject to federal jurisdiction because it arises out of an ordinary contract between Calprop and Shirley, not out of a CBA. See Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1409 (9th Cir.1992) (cause of action for fraud based upon promises of continued company operation did not arise out of CBA and therefore not preempted by section 301); Majestic Hous., 743 F.2d at 1345 (where amount of lien is determined by CBA but rights and liabilities of parties governed by state statute, no preemption or jurisdiction under section 301). There is no federal jurisdiction over the claim because the dispute is not focused on the CBA, but rather on the state-law-governed Letter Agreement.[2]
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 515 provides:
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 [2]
 Trust Funds move for leave to dismiss and refile their complaint so as to take advantage of 28 U.S.C. § 1367(a)'s provision for pendent party jurisdiction. Section 1367 by its own terms is applicable only to actions commenced on or after December 1, 1990. See 28 U.S.C.A. § 1367, Historical and Statutory Notes, at 229 (West Supp.1992). We deny Trust Funds' request to evade the effective date of section 1367