**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GRANITE ROCK COMPANY,
          *Plaintiff-Appellant,*

          v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, FREIGHT CONSTRUCTION,
GENERAL DRIVERS, WAREHOUSEMEN
& HELPERS, LOCAL 287 (AFL-
CIO); INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
          *Defendants-Appellees.*

No. 07-15040
D.C. No.
CV-04-02767-JW

GRANITE ROCK COMPANY,
          *Plaintiff-Appellee,*

          v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, FREIGHT CONSTRUCTION,
GENERAL DRIVERS, WAREHOUSEMEN
& HELPERS, LOCAL 287 (AFL-
CIO),
          *Defendants-Appellants,*

          and

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
          *Defendant.*

No. 07-16142
D.C. No.
CV-04-02767-JW

14703

GRANITE ROCK COMPANY,
          *Plaintiff-Appellant,*

               v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, FREIGHT CONSTRUCTION,
GENERAL DRIVERS, WAREHOUSEMEN
& HELPERS, LOCAL 287 (AFL-
CIO); INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
          *Defendants-Appellees.*

No. 07-16236

D.C. No.
CV-04-02767-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
September 8, 2008—San Francisco, California

Filed October 22, 2008

Before: Ronald M. Gould and Carlos T. Bea, Circuit Judges,
and James W. Sedwick,* District Judge.

Opinion by Judge Gould

*The Honorable John W. Sedwick, Chief United States District Judge
for the District of Alaska, sitting by designation.

## COUNSEL

Garry G. Mathiason, Alan S. Levins, Adam J. Peters, and Kimberly L. Owens, Littler Mendelson, San Francisco, California, for plaintiff-appellant Granite Rock Company.

Stephen P. Berzon, Peter D. Nussbaum, and Peder J.V. Thoreen, Altshuler Berzon LLP, San Francisco, California, for appellee International Brotherhood of Teamsters.

Duane B. Beeson and Lisa W. Pau, Beeson Taylor & Bodine, APC, San Francisco, California, for appellant/cross-appellee Teamsters Local 287.

## OPINION

GOULD, Circuit Judge:

Granite Rock Company ("Granite Rock") sued International Brotherhood of Teamsters, Local 287 ("Local 287") and International Brotherhood of Teamsters ("IBT") under section 301(a) of the Labor Management Relations Act ("LMRA") with claims relating to a collective bargaining agreement. Granite Rock seeks remedies against Local 287 for breach of the collective bargaining agreement, and against IBT for tortious interference with the collective bargaining

agreement between Granite Rock and Local 287. The district court dismissed the claim against IBT under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Granite Rock appeals that dismissal, and we affirm.

In the dispute between Granite Rock and Local 287, the parties appeal and cross-appeal a total of five orders, but we need reach only one: the district court's denial of Local 287's motion to compel arbitration on the question of contract formation. We reverse that ruling and remand with instructions to compel arbitration on the entire dispute between Granite Rock and Local 287.

**I**

For purposes of analyzing the district court's dismissal of Granite Rock's claims against IBT, Granite Rock's alleged facts must be presumed true and viewed in the light most favorable to Granite Rock. *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1069 (9th Cir. 2006). Granite Rock alleges: Granite Rock is a California company engaged in supplying ready mixed concrete for commercial use, and Local 287 represents certain employees at Granite Rock's San Jose facility. Between March 1, 1999 and April 30, 2004, Granite Rock and Local 287 were parties to a collective bargaining agreement ("CBA"). Before expiration of that agreement, the parties began negotiations. Throughout the negotiations, Rome Aloise ("Aloise"), the administrative assistant to the General President of IBT, advised Local 287 that certain provisions of the CBA were inadequate. Aloise also represented the interests of IBT and other local unions affiliated with IBT in the negotiations. No resolution was reached in April or May, and in early June, 2004, after the CBA between Granite Rock and Local 287 expired, Local 287 members went on strike. Negotiations resumed shortly thereafter, and the parties reached a tentative four-year agreement ("new CBA") at 4:00 a.m. on July 2, 2004. This tentative agreement contained a broad arbitration clause requiring the

parties to arbitrate "[a]ll disputes arising under this agreement."

At the conclusion of the successful bargaining session, George Netto ("Netto"), Business Representative for Local 287, told Granite Rock's CEO Bruce Woolpert that Netto would put the new CBA to a vote among the union members, would recommend ratification, and would cease picketing. At the same time, Netto raised the topic of a "back-to-work" agreement to provide for the terms under which the parties would return to work, including liability for actions taken during the strike. However, the parties agreed to discuss preparing a back-to-work agreement at a later date.

Local 287 members allegedly ratified the new CBA, which contained a "no-strike" clause, later on the morning of July 2, 2004. However, on July 5, 2004, Aloise and members of Local 287 called workers to instruct them not to return to work the next day. On July 6, 2004, Netto demanded a back-to-work agreement that would explicitly shield Local 287, its members, and IBT from any liability arising from the strike. Granite Rock refused to sign such an agreement, and Local 287 continued its strike in violation of the no-strike clause. Throughout the strike, Aloise played an active leadership role; he sent letters to other local unions and employees encouraging their support, held meetings to discuss strategy, and sought to secure financial support for the strike. IBT gave benefits to Local 287 members as long as they did not return to work.

Granite Rock's Third Amended Complaint alleged breach of contract against Local 287, and tortious interference with contract against IBT. Both actions were asserted under section 301(a) of the LMRA, 29 U.S.C. § 185(a). Defendant IBT moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted that motion on the grounds that Granite Rock failed

to state a claim against IBT under section 301(a). Granite Rock timely appealed.

There is only one fact that is critical to our determination of whether the entire dispute between Granite Rock and Local 287 should have been submitted to arbitration, and that fact is undisputed: While the parties disagree about the ratification date, they agree that the tentative new CBA reached on July 2, 2004, contains an arbitration clause that requires arbitration for "[a]ll disputes arising under this agreement." Interpreting this clause, the district court dismissed the issues of breach and damages in favor of arbitration, but retained the question of contract ratification for the district court's determination. Local 287 timely appealed the order retaining the formation question.

Because we determine that the district court erred by denying Local 287's motion to compel arbitration of the entire dispute, and we remand for arbitration, we need not address the appealed orders that arose from the district court's rulings in resolving on the merits the issue of contract formation by ratification.

## II

The district court's dismissal of Granite Rock's claims against IBT presents questions of law which we review *de novo*. *Pruitt v. Cheney*, 963 F.2d 1160, 1162-63 (9th Cir. 1992).

**[1]** Section 301(a) of LMRA, 29 U.S.C. § 185(a), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without

respect to the amount in controversy or without regard to the citizenship of the parties.

Jurisdiction over a claim under section 301(a) requires two things: First, that the claim be "based on an alleged breach of contract between an employer and a labor organization," and second, "that the resolution of the lawsuit be focused upon and governed by the terms of the contract." *Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm., Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983).

A party need not be a signatory to a CBA to come within the purview of section 301(a). In *Painters & Decorators*, the "Joint Committee"—created by the bargaining agreement to administer the terms of the agreement—was not a signatory of the agreement. We held that the Committee was still an appropriate defendant under section 301(a) because the CBA created the Committee and governed its rights and duties. *Id.* at 1069.

However, the second part of the *Painters and Decorators* test requires that resolution of any section 301(a) claim be governed by the terms of the relevant agreement. In *Carpenters S. Cal. Admin. Corp. v. Majestic Housing*, 743 F.2d 1341 (9th Cir. 1984), the defendant's property was subject to a mechanic's lien because a party to the collective bargaining agreement had not made required trust contributions. 743 F.2d at 1343. The district court found jurisdiction under section 301(a) because the lien foreclosure would require interpretation of the collective bargaining agreement. *Id.* at 1345. We reversed, holding that "mere reference to the collective bargaining agreement does not make this a case 'arising under' federal law within the meaning of 28 U.S.C. § 1441." *Id.*

Although *Majestic Housing* dealt with rights under a mechanic's lien, its reasoning also applies to tort claims. The underlying agreement in *Majestic Housing* was relevant to the mechanic's lien because the lien could only be foreclosed if

the contract was violated, just as a tortious interference with contract claim depends on a breach. The court in *Majestic Housing* held that such a connection is inadequate to satisfy the requirements of section 301(a). 743 F.2d at 1345.

[2] Applying the rule developed in *Majestic Housing*, we conclude that the district court was correct to dismiss Granite Rock's claim against IBT because a claim for tortious interference cannot be said to "arise under" the new CBA between Granite Rock and Local 287. *Majestic Housing*, 743 F.2d at 1345. That agreement did not mention IBT, and did not govern any rights or duties of IBT. Indeed, Granite Rock concedes that the alleged tortious interference could only be a violation of a general tort duty, not a violation of any specific contractual duty. Notwithstanding, Granite Rock contends that the alleged tortious interference claim still meets the requirement that "the resolution of the lawsuit be focused upon and governed by the terms of the contract." *Painters & Decorators*, 707 F.2d at 1071. Granite Rock's theory is that because breach of the underlying contract is a necessary element of the tortious interference claim, the resolution of the tort claim is "focused upon" and "governed by" the contract.

[3] We reject Granite Rock's argument, because its position clashes with the plain language of section 301(a) and the *Majestic Housing* requirement that the underlying agreement must have *created* the rights or liabilities which the parties seek to vindicate by their suit. *Majestic Housing*, 743 F.2d at 1345. We made this distinction clear in *Majestic Housing*: In *Painters and Decorators*, "the rights and liabilities of both parties were determined by the bargaining agreement," but in *Majestic Housing*, "although the amount of the mechanic's lien must be determined by the terms of the collective bargaining agreement, Majestic has no rights or liabilities *under the agreement*." *Id.* Similarly, IBT has no rights or duties under the agreement, and thus Granite Rock's tortious interference claim against IBT does not meet the requirements of section 301(a).

Granite Rock makes an additional argument in its unsuccessful attempt to bridge this gap: that the "close relationship" between IBT and Local 287, at least when presented with IBT's aim to "benefit" from the breach by gaining a release of liability through the proposed back-to-work agreement, justifies allowing a tort claim against IBT. Although Granite Rock's argument has some emotive force, Granite Rock provides no persuasive case support for its position, and does not explain adequately how the concepts of "close relationship" and "benefit" bring IBT within the scope of the contractual rights and obligations created by the new CBA.[1]

The majority of our sister circuits to have considered the question have declined to find a section 301(a) cause of action against parties not governed by the relevant agreement. *See Int'l Union, United Mine Workers of America v. Covenant Coal Corp.*, 977 F.2d 895, 897 (4th Cir. 1992) ("The majority of courts to address the issue have refused to construe section 301 in such a way as to allow [tortious interference claims against non-signatories.]"); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 501 (5th Cir. 1982) ("[C]ourts have almost unanimously held that a section 301 suit may be brought for violation of a labor contract only against those who are parties to the contract at issue."). Although there are some variations in phrasing, the circuits are almost unanimous in rejecting LMRA jurisdiction over a

---

[1]It is undisputed that the separate back-to-work agreement was never signed, and IBT is not transformed into a third party beneficiary or obligor by supporting an abandoned addendum to the relevant collective bargaining agreement.

Moreover, although there may be limited section 301 remedies available when parties are so intertwined that one is the "alter ego" of the other, and a plaintiff might be able to recover by "piercing the veil," *see Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 984-85 (9th Cir. 1999) (finding jurisdiction under section 301 because the veil-piercing theory "merely concern[ed] the remedy attached to a breach of contract claim governed by LMRA," and was not a separate tort cause of action), Granite Rock did not pursue such a theory in the district court.

claim such as Granite Rock's claim against IBT. *See Green-blatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 572 (2d Cir. 1995) (holding that "at a minimum the defendant must have breached some duty created by a labor contract to be liable for a violation" under section 301(a)); *Covenant Coal*, 977 F.2d at 897 (declining to find jurisdiction under section 301(a) for a tortious interference with contract claim); *Pratt-Farnsworth*, 690 F.2d at 501-02 (holding, in response to plaintiffs' arguments that defendants had "conspired" with the alleged breaching party, that "the absence of a contractual relationship between [the parties] requires dismissal of the section 301 claim"); *Serv., Hosp., Nursing Homes & Public Employees Union, Local No. 47 v. Commercial Prop. Servs., Inc.*, 755 F.2d 499, 506 (6th Cir. 1985) (holding "that a district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract"); *Loss v. Blankenship*, 673 F.2d 942, 948 (7th Cir. 1982) (holding "that a complaint for interference with a collective bargaining agreement, against a non-party to that agreement, is not actionable under § 301(a) of the LMRA"); *United Food & Com. Workers Union, Local No. 1564 v. Quality Plus Stores, Inc.*, 961 F.2d 904, 906 (10th Cir. 1992) (concluding "that section 301 does not establish subject-matter jurisdiction for a federal common law claim of tortious interference against an entity that is not a signatory to the contract").

The only circuit to have adopted Granite Rock's position is the Third. *Wilkes-Barre Publishing Co. v. Newspaper Guild Local 120*, 647 F.2d 372 (3d Cir. 1981). In *Wilkes-Barre*, the court held that tortious interference claims do arise under the underlying contract because "an essential element of the cause of action . . . is a violation of the collective bargaining agreement." *Id.* at 380-81. We rejected similar reasoning in *Majestic Housing*, where we held that "mere reference to the

collective bargaining agreement" is inadequate to confer jurisdiction under section 301(a). 743 F.2d at 1345.[2]

Granite Rock attempts to distinguish cases from other circuits by arguing that they did not deal with parties who are "closely related" or who "benefitted from" the breach. As discussed above, these distinctions are unsupported by precedent and the fact remains that only the Third Circuit has recognized a tortious interference claim under section 301(a).

Granite Rock's assertion that we should create federal common law to reach IBT misinterprets our instructions from Congress and the Supreme Court. The Supreme Court has said that section 301 can be read as a "congressional mandate to the federal courts to fashion a body of common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers v. Lueck*, 471 U.S. 202, 209 (1985). However, based on the language of section 301(a) and *Allis-Chalmers*, we understand this as a mandate to create a federal common law of labor contract interpretation, not an independent body of tort law. *Accord*, *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1180 (7th Cir. 1993) ("The common law to be made is a common law of contracts, not a source of independent rights, let alone tort rights; for section 301 is as we have said a grant of jurisdiction only to enforce contracts.").

Finally, Granite Rock's invocation of legislative intent does not persuade us. Congress intended to improve the enforcement of bargaining agreements via the LMRA. S. Rep. No. 80-105 (1947). But "[n]othing in the legislative history of

---

[2]The Eleventh Circuit initially seemed to adopt the Third Circuit's approach in *Local 472, United Ass'n of Journeymen & Apprentices v. Georgia Power Co.*, 684 F.2d 721, 725 (11th Cir. 1982). However, the Eleventh Circuit then implicitly overruled that precedent when it held, in *Xaros v. U.S. Fid. and Guar. Co.*, 820 F.2d 1176, 1181 (11th Cir. 1987), that section 301(a) jurisdiction did not lie when the defendant was not a signatory to the underlying contract, because the cause of action did not "arise under the agreement but [was] merely related to it." *Id.*

§ 301 bears on the question of holding a nonsignatory to a collective bargaining agreement." *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 503 n.6 (5th Cir. 1982). Granite Rock asks us to extrapolate from Congress's general purpose a tort claim against IBT, despite the language of the statute, in the interests of "fundamental fairness." We decline to do so. The plain language of the statute appears to require at least that rights or obligations created by a labor agreement be in contest to support a section 301(a) challenge. Moreover, the persuasive array of authority in our sister circuits counsels against adopting Granite Rock's position, and leads us instead to take the beaten path established by this extra-circuit precedent.

Any "gap" that might exist in Congress's labor law design is for Congress and not for us to fill. When Congress regulates an area comprehensively, as it has done in the federal labor laws, rights and remedies can be defined and circumscribed. Congress has not left parties such as Granite Rock altogether without recourse. It has provided for remedies in labor disputes through both section 301—against parties to the bargaining agreement—and through the National Labor Relations Act, 29 U.S.C. §§ 151-169. Indeed, Granite Rock vigorously pursued actions against Local 287 in the federal courts as well as in the National Labor Relations Board. If Congress did not provide a remedy for Granite Rock directly against IBT on its asserted tortious interference claim, then that is an issue to be addressed by Congress, not by an extraordinary and outlier interpretation of the governing statute.

**[4]** We affirm the dismissal of Granite Rock's claims against IBT.[3]

---

[3]Language in section 301(a) of the LMRA strongly suggests that its requirements are necessary to confer subject-matter jurisdiction on the federal courts: The action "may be brought in any district court of the United States having jurisdiction of the parties, without respect to the

## III

We review de novo the effect of the arbitration clause in the alleged new CBA between Granite Rock and Local 287. *See Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (en banc).

**[5]** The United States Supreme Court has drawn a distinction between challenges to an arbitration clause and challenges to an entire contract. The Court has stated this general rule: "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). The Ninth Circuit recognized this dichotomy recently in *Nagrampa*, where we held that federal courts must refer to arbitration those claims seeking to "invalidate or otherwise directly affect the entire contract," 469 F.3d at 1271, but may hear "challenges specifically to [an] arbitration agreement." *Id.* at 1269.

**[6]** Consistent with this framework, a party generally may not sue in federal court under a contract that, by its terms,

---

amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (reasoning that similar language in the Clean Water Act made the Act's requirements jurisdictional). This reading is consistent with our precedent. *See Majestic Housing*, 743 F.2d at 1345 (holding that "mere reference" to a collective bargaining agreement does not confer federal question jurisdiction under section 301(a)). Thus, a failure to state a claim under section 301(a) of the LMRA is a defect in subject-matter jurisdiction, and Granite Rock's claim against IBT here should have been dismissed under Federal Rule of Civil Procedure 12(b)(1), not 12(b)(6) as the district court held. This difference in theory, however, leads to the same result of dismissal. We may affirm the district court's dismissal of the claim on any grounds supported by the record, even if the district court did not rely on those grounds. *See United States v. State of Wash.*, 969 F.2d 752, 755 (9th Cir. 1992).

requires arbitration. *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404 (9th Cir. 1989). In such cases, the matter must be sent to arbitration "unless there is a challenge to the arbitration provision which is separate and distinct from any challenge to the underlying contract." *Id.* at 1410 (citing *Prima Paint*, 388 U.S. at 402-04). In *Teledyne*, the plaintiff sued for breach of contract, and defendant argued that the draft agreement was never finalized. *Id.* We upheld the dismissal of the claim, in favor of arbitration, to avoid the absurd result where a plaintiff simultaneously argues that the whole contract is valid, but that the court should ignore the arbitration provision which strips its power.

Two years later, we held that a party who disputes the formation of a contract may not be forced to arbitrate the issue of contract formation; otherwise "[p]arty A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature." *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991). In *Three Valleys*, plaintiffs sued E.F. Hutton for substantial losses in their investment accounts. *Id.* at 1137. Defendant asserted an arbitration clause in a client agreement, while plaintiffs contended that the entire client agreement was not binding because the signor lacked authority to bind plaintiffs. *Id.* at 1138. The district court directed arbitration of the contract formation issue, and we reversed on the grounds that forcing the formation issue into arbitration would have held the plaintiffs to an arbitration clause upon which they might not have agreed. *Id.* at 1138-42.

The parties' briefing and the district court's careful analysis in the case at bar illuminate the conceptual tension that exists between *Teledyne* and *Three Valleys*. It might be argued that these two cases look in opposite directions: *Teledyne* compelled arbitration on the question of contract formation, *Three Valleys* reserved the formation question for the court. However, the court in *Three Valleys* distinguished its facts from those in *Teledyne* in an instructive way:

> *Teledyne* is a rare case. In *Teledyne*, the plaintiff (1) asserted the validity of the underlying contract containing the arbitration clause by bringing a breach of contract action and (2) did not make an independent challenge to the arbitration clause. The plaintiff thus had no ground on which to repudiate the arbitration agreement. As we explained in *Teledyne*, to allow the plaintiff to circumvent arbitration in these circumstances by bringing its claims in federal court would lead to an absurd result . . . .

*Three Valleys*, 925 F.2d at 1142. This reading of *Teledyne* precisely fits the facts of the case presented by the appeal before us. Whether the facts of this case and of *Teledyne* are "rare" or not, we conclude that the general rule stated by the Supreme Court, reiterated recently in our *en banc* decision in *Nagrampa*, and previously implemented sensibly in *Teledyne,* should be followed.

[7] Here, Granite Rock brings a section 301(a) breach of contract action based on its alleged new CBA with Local 287, which includes an arbitration clause covering "[a]ll disputes arising under this agreement." This clause is broad enough to cover the dispute over contract formation, and Granite Rock does not make an independent challenge to the arbitration clause.[4] Granite Rock "thus ha[s] no ground on which to repu-

---

[4]While Granite Rock does not argue the arbitration clause is invalid in any way, it does argue briefly that the clause does not cover a dispute over formation. However, Granite Rock offers no support for a narrow reading of the arbitration clause here. Arbitration clauses are to be construed very broadly: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Comm. Workers*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Because Granite Rock is suing "under" the alleged new CBA, the arbitration clause is certainly "susceptible of an interpretation" that covers the dispute.

diate the arbitration agreement." *Three Valleys*, 925 F.2d at 1142. Therefore, we must not allow Granite Rock to "circumvent arbitration in these circumstances by bringing its claim in federal court." *Id.*

Granite Rock contends that because Local 287 has contested the issue of contract formation, Local 287 has repudiated and waived the arbitration clause and should be estopped from asserting it, even as to questions of breach and damages. We summarily rejected that rationale in *Teledyne*, where the defendant denied the existence of the contract but asserted the arbitration clause. We stated: "Teledyne argues that Kone has no right to enforce the arbitration provision because it has denied that a valid contract exists. If accepted, this argument would produce an absurd result . . . ." 892 F.2d at 1410. Local 287 timely raised the arbitration issue, and thus it is entirely acceptable for Local 287 to argue in the alternative that the agreement was never ratified, but even if it was, this case belongs in arbitration. (This outcome does not fun afoul of *Three Valleys*. The court there ultimately held that " 'a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.' " *Three Valleys*, 925 F.2d at 1142 (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986)). In *Three Valleys* the party contesting contract formation also resisted arbitration, so it was a permissible outcome to reserve the question of contract formation for the court.

**[8]** Here, both parties consented to arbitration; Granite Rock implicitly by suing under the contract containing the arbitration clause, and Local 287 explicitly by asserting the arbitration clause. Either might have had the right to a court determination of the formation issue had that right not been waived by asserting the validity of the contract. The holding of *Teledyne* is clear: Parties have no right to access the federal courts when they sue under agreements which, by their terms, remove the federal courts' power to hear the case—unless

they challenge the arbitration clause independently. *See Teledyne*, 892 F.2d at 1410.

Congress and the Supreme Court have declared a "national policy favoring arbitration." *Buckeye Check Cashing*, 546 U.S. at 443 (citing the Federal Arbitration Act, 9 U.S.C. §§ 1-16). As courts have noted however, this policy is best served by limiting arbitrators' jurisdiction to those cases where the parties have actually agreed to arbitrate; "[t]he willingness of parties to enter into agreements that provide for arbitration of specified disputes would be 'drastically reduced' . . . if a labor arbitrator had the 'power to determine his own jurisdiction . . . .' " *AT & T*, 475 U.S. at 651 (quoting Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1509 (1959)). When the parties have both consented to arbitration there are no concerns about arbitrators imposing themselves upon parties. If a party sues under a contract containing a broad arbitration clause, logic dictates that the most reliable way of honoring the parties' expectations is to enforce that arbitration clause from the outset unless the other party shows it never agreed to arbitrate.

When an alleged contract includes a broad arbitration clause, it is sensible to conclude that an arbitrator will hear challenges to contract formation or to the contract as a whole —provided that both parties have consented, in some fashion, to arbitration. *Teledyne* shows that one can consent to arbitration by suing under a contract that includes an applicable arbitration clause.

**[9]** The challenge here regards contract formation, Granite Rock does not challenge the arbitration clause independently, and both parties have consented to arbitration. As such, Granite Rock's claims against Local 287 should have been dismissed in favor of arbitration.

We **AFFIRM** the district court's judgment dismissing Granite Rock's claims against IBT, and we **REVERSE** and

**REMAND** the district court's order denying Local 287's motion to arbitrate, with instructions that Granite Rock and Local 287 should be compelled to arbitrate their dispute in its entirety. Costs of IBT and of Local 287 shall be borne by Granite Rock.